THE STATE OF OHIO, APPELLEE, *v.* MOSLEY, APPELLANT.

[Cite as State v. Mosley (1977), 55 Ohio App. 2d 178.]

(No. 77AP-434—Decided October 18, 1977.)

Mr. *George C. Smith,* prosecuting attorney, *Mr. Alan C. Travis* and *Mr. David Hardymon,* for appellee.
*Messrs. Pope, Blum & Associates,* for appellant.

STRAUSBAUGH, P. J. This is an appeal by defendant from a conviction in the Common Pleas Court for the offense of aggravated trafficking in heroin, a violation of R. C. 2925.03(A)(1) ("[n]o person shall knowingly * * * offer to sell a controlled substance.")

The record indicates that in the Common Pleas Court a stipulation was entered into between plaintiff and defendant, as follows:

"If called to testify, Carol Grelle, a detective in the narcotics bureau of the Columbus Police Department, would testify that at approximately midnight, the evening of November 11, 1976/morning of November 12, 1976, she and an informant, Toni Reilly, were at Church's Chicken at Kelton and Main Streets here in Columbus. At that time the informant left the car that the two were in and went to a car in which the defendant, as far as she, Carol Grelle, could tell, was the only occupant. The informant had conversation through the driver's side car window with the Defendant. The informant then returned to the car in which she, Carol Grelle, was waiting. The informant and she, Carole Grelle, then left that location to purchase other heroin and then to return to the Brookside Motel, here in Franklin County, Ohio, in order to meet the Defendant in order to purchase heroin, which purchase to her, Carol Grelle's understanding had been set up at Church's Chicken.

"At approximately 1:00 a. m. the informant and she, Carol Grelle, were in their room, No. 20, at the Brookside Motel when Walter Jameson knocked on the door and wanted to talk to the informant. Carol Grelle knows and recognized Walter Jameson in that she had purchased

heroin from him on two separate occasions two days prior to this incident [which was in fact heroin]. The informant went outside with Mr. Jameson. A few minutes later she came back in and told Carol Grelle that the Defendant and Mr. Jameson had a 'football' to sell—A 'football' being a quantity of heroin usually selling for $300-$400. At that time Carol Grelle told the informant that she, Carol Grelle, did not have enough money and that she had just over $100. The informant left the room to talk with the Defendant and Mr. Jameson. The informant returned to the room approximately five minutes later stating that the Defendant and Mr. Jameson had cut the 'football' in half and they would take $150 for two 'spoons'—A 'spoon' also being a quantity of heroin selling for approximately $75—$100. At that time the informant and Carol Grelle went outside to the automobile where the Defendant and Mr. Jameson were waiting. The Defendant was sitting in the driver's seat, Mr. Jameson was sitting in the middle of the front seat, the informant was sitting on the passenger's side of the front seat, and she, Carol Grelle, was in the middle of the back seat—the car being a Malibu with Ohio plates No. 4906 CN.

"Once in the car, the informant introduced Carol Grelle to the Defendant and Carol Grelle told the Defendant that she only had $140. At that time the Defendant put out his hand and Carol Grelle gave the Defendant $140 in twenties. The Defendant then handed Carol Grelle a small plastic bag containing the alleged heroin. Carol Grelle then asked the Defendant how much was there, the Defendant responding 'about 1½ or 2 spoons'. The Defendant further stated, 'I'm a business man, so I don't rip people off. I sell good dope. When I have satisfied customers, they come back again.' The Defendant further said that if she, Carol Grelle, liked the stuff to call the informant and she, the informant, would contact the Defendant and that they could get more. There was some further small talk and the informant and Carol Grelle got out of the automobile and went back into the room at the Motel.

"It is further stipulated that the substance was turned

into the Columbus Police Property Room under property Number 149996. It was analyzed on November 12, 1976, by Nick Zonakis of the Columbus Police Department and found not to contain amphetamines, barbiturates, hallucinogens nor narcotics and did not, therefore, contain heroin. Charges were filed and a warrant issued for the Defendant, Louis C. Mosley, on January 23, 1977, for ·offer to sell' as the officers involved were aware that the substance was not heroin.

"It is further stipulated that, if called to testify, the Defendant, Louis C. Mosley would testify on the evening/morning of November 11/12 he was at Church's Chicken at Kelton and Main Streets here in Columbus but that he did not have a conversation with the informant, Toni Reilly, at that time. However, Walter Jameson had a conversation with them in Carol Grelle's car. About 1:00 a.m. on November 12, 1976, he was at the Brookside Motel parking lot driving a Malibu automobile and was accompanied by Walter Jameson. That conversation took place with Toni Reilly and eventually Carol Grelle got in the car with Toni Reilly. The occupants were in the positions in the car as represented by Carol Grelle.

"At that time a transaction, involving two 'spoons' of alleged heroin did occur as follows: he, Louis C. Mosley had the plastic bag with the alleged heroin in his pocket. Following discussion about a price for the alleged heroin, at which time a price of $140 was agreed upon, he, Louis C. Mosley passed the bag to Walter Jameson who gave it to Toni Reilly who in turn gave it to Carol Grelle. At that time Carol Grelle gave the $140 to Toni Reilly who gave it to Walter Jameson. Following some further conversation about being straight and not ripping people off, the informant and Carol Grelle left the car and he, Louis C. Mosley and Walter Jameson left together in the car. Walter Jameson did give some of the money he had received [$140] to Louis C. Mosley.

"He, Louis C. Mosley, knew what he was involved in selling was not heroin. In fact, what was being sold was a mixture of baking soda, coffee and confectioner's sugar

which he, Louis C. Mosley, had helped mix. It was the preconceived intention of Walter Jameson and Louis C. Mosley to 'rip off' Toni Reilly and Carol Grelle."

The record further reveals that when the case was called for trial the defendant entered a plea of no contest and was found guilty, from which conviction and sentence this appeal is taken.

Defendant's single assignment of error is:

"Trial court erred in finding defendant guilty on his nolo contendre plea as defendant's conduct in this case, as evidenced in the stipulated facts, does not violate the statute under which he was found guilty, or in the alternative, that portion of the statute under which defendant is charged is unconstitional."

R. C. 2925.03 provides, in part:

"(A) No person shall knowingly do any of the following:

"(1) Sell *or offer to sell* a controlled substance in an amount less than the minimum bulk amount as defined in section 2925.01 of the Revised Code; * * *.

"(C) If the drug involved is any compound, mixture, preparation, or substance included in Schedule I with the exception of marihuana or in Schedule II, whoever violates this section is guilty of aggravated trafficking.

"(1) Where the offender has violated division (A)(1) of this section, aggravated trafficking is a felony of the third degree, and if the offender has previously been convicted of a felony drug abuse offense, aggravated trafficking is a felony of the second degree. * * *" (Emphasis added.)

Defendant argues that his constitutional right of free speech was violated when charged with uttering legally harmless words and that the trial court's interpretation of this statute created a vagueness and overbreadth which violated the due process clause of the constitution. Defendant contends that two essential elements of the crime were missing: *mens rea* and a legally controlled substance.

An examination of the statute in question makes it clear that an offer to sell narcotics is specifically forbidden.

Furthermore, we find that the legislature may constitutionally prohibit and make illegal an offer to sell a controlled substance. The question which is unique in this case is where the act has been completed and a harmless substance sold has an offense been committed? In this case, there is evidence that defendant had previously sold heroin and that defendant had an ability to obtain heroin for sale; however, it was defendant's intention not to sell heroin, but, rather, a mixure of soda, coffee and sugar. At the sale at the motel the defendant was accompanied by a person from whom the informant had purchased heroin on two separate occasions, two days prior to this incident, which is some indication that defendant had an ability to obtain and produce heroin for sale. The fact that defendant did not *actually produce* heroin is no more pertinent to the prosecution of the cause or an element of the crime than would be the requirement that an act of intercourse would be required to obtain a conviction in a charge involving soliciting for prostitution. The statute makes it a crime to *offer* to sell heroin. The defendant made an offer to sell heroin, thereby violating the law. The crime was committed when the offer was made, not when the transaction was consummated. There is evidence that defendant's statements were not made in jest or to express an idea which would involve freedom of speech, or in a manner as not to be taken seriously by others. We cannot say that the act of the legislature in prohibiting a person from offering to sell controlled substances is unreasonable, or that it violates the Constitution of the United States, or the state of Ohio.

We, therefore, find defendant's single assignment of error to be not well taken and the judgment is affirmed.

*Judgment affirmed.*

McCORMAC, J., concurs.
HOLMES, J., dissents.

McCORMAC, J., concurring. Effective July 1, 1976, the Ohio General Assembly has provided that a defendant

is guilty of trafficking in drugs if he either knowingly sells or offers to sell a controlled substance. Obviously, the General Assembly believed that trafficking in drugs involves the offer to sell just as much as it does the sale of controlled substances, and that this serious crime should be attacked from both avenues. Hence, two offenses are created by R. C. 2925.03, each of an equal stature. If a sale of a controlled substance occurs after an offer of sale is made, there may still be two counts in the indictment; one, of the offer to sell a controlled substance, and the other, the sale thereof, as R. C. 2941.04 provides that the two offenses may be charged in the indictment. However, R. C. 2941.25 permits the defendant to be convicted of only one when the same conduct of defendant can be construed to constitute two or more allied defenses of similar import, as would be the case with an offer to sell followed by a sale.

Thus, knowingly offering to sell a controlled substance is a crime. R. C. 2901.22(B) defines "knowingly" as follows:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. * * *"

In this case, the stipulated evidence clearly shows that the defendant offered to sell heroin while aware that his conduct would probably cause a certain result—*i. e.*, inducing the purchaser to complete the buy. The mere fact that the seller, at the time of the offer, intended to flim-flam the purchaser by providing a noncontrolled substance rather than the controlled substance which was offered for sale is of no importance. The defendant was out on the street trafficking in drugs and offering to sell a controlled substance, heroin. This is an entirely different situation from one where the seller offers to sell a substance, described as a controlled substance, which is observed by the purchaser and which is actually not a controlled substance. The intent then is to offer for sale the substance which the buyer has and it is the actual substance that decides the issue of whether the offer was for sale of a controlled substance.

In this case, there being no actual substance involved during the offer to sell, the words themselves are proof that the offer to sell was of a controlled substance. This case is similar to the one where the seller actually exhibits a substance which is tested by the prospective buyer and found to be heroin, but the seller secretly intends to rip-off the buyer by substituting a harmless substance at the actual sale. According to the dissent, there would be no crime of offer to sell committed because of the drug trafficker's secret intent to sell an uncontrolled substance. Such a holding effectively emasculates the offer to sell part of the statute.

The case herein is distinquishable from the federal cases relied upon by appellant, primarily *United States* v. *Oviedo* (C. A. 5, 1976), 525 F. 2d 881, in that the federal statutes made the attempt to sell a crime rather than the offer to sell. I agree with the court in *Oviedo* that if a sale of a noncontrolled substance takes place after an offer to sell a controlled substance is made, there is insufficient proof of an attempt to sell a controlled substance. The best evidence of the intent of the defendant is what actually occurred at the sale. Appellant argues that his original intent was to make the purchaser believe that he was selling heroin while actually flim-flamming her. We accept that to be a fact, and this lack of intent provides a defense for a charge of sale or attempted sale of heroin, as in *Oviedo,* but not for the crime of offering a controlled substance for sale. The moral of this story is simply that if you knowingly make a bona fide (on its face) offer to sell heroin, you have committed the crime regardless of what happens thereafter or what your subjective intent was.

The statute in question is quite clear and is not unconstitutionally vague, nor does it constitute a violation of the defendant's right of free speech. The offer to sell heroin is no more constitutionally protected than the offer to sell sex. The end result of the offer to sell heroin is generally far more serious than the former. As Justice Oliver Wendell Holmes so aptly reflected many years ago,

not every form of speech is constitutionally protected by the First Amendment. See *Frohwerk* v. *United States* (1919), 249 U. S. 204. Certainly, speech which is used as the instrumentality for committing a crime is not so protected.

The defendant's own stipulation convicts him. The defendant offered to sell the undercover police agent hereoin, a controlled substance. The defendant's secret intention of really selling something else does not matter.

The judgment of the trial court should be affirmed.

HOLMES, J., dissenting. I must dissent from the majority. The crime that was committed here was of the nature of larceny by trick, fraudulent sale, or of like kind. There could be no trafficking of a controlled drug on the facts specifically presented here, as there was no controlled drug involved—and what is of greater importance, the defendant knew at the time of offering the ersatz substance for sale that it was not a controlled substance.

I have no brief for this defendant, in that he is no neophyte insofar as being in the drug scene, but we must decide any given case upon the facts before us. Here, the basic content of the substance sold to the undercover detectives was a baking soda, coffee and confectioners' sugar mixture, and known by this defendant to be such a mixture in that he had mixed it for just such a flim-flam sale.

This defendant, having been known to be familiar with heroin, knew precisely what he was selling and knew such sale was a rip-off, not an actual sale of a controlled drug.

There is no question that the statute provides that not only the sale, but also the attempted sale of a controlled substance shall be a crime. However, there was no *mens rea* established here for a finding of a sale of a controlled drug, or for a finding of an attempted sale of such a controlled drug. This was a completed sale of a baking soda mixure, which is not a violation of the criminal code as charged.