THE STATE OF OHIO, APPELLEE, *v.* SCOTT, APPELLANT.

[Cite as State v. Scott (1982), 69 Ohio St. 2d 439.]

(No. 81-136—Decided February 24, 1982.)

*Mr. William F. Schenck,* prosecuting attorney, and *Ms. Vicki R. Patton-Hulce,* for appellee.

*Messrs. Cox & Cox* and *Mr. Timothy S. Chappars,* for appellant.

LOCHER, J.

### I.

This cause presents one issue; whether the trial court properly entered a verdict of guilty against appellant under R. C. 2925.03, which provides:

"(A) No person shall knowingly do any of the following:

"(1) Sell or *offer* to sell a controlled substance in an amount less than the minimum bulk amount as defined in section 2925.01 of the Revised Code. * * * " (Emphasis added.)

Appellant argues that the judgment of the trial court is erroneous because he did not transfer a controlled substance. We disagree. Appellant's position would require that this court engraft an additional element of proof to the portion of. R. C. 2925.03(A)(1) which prohibits offers to sell. That is, appellant would have us require that an *offer* to sell includes a *transfer* of a controlled substance. We decline this invitation to indulge in judicial legislation.

R. C. 1.42 provides, in pertinent part: "Words and phrases shall be read *in context* and construed according to the rules of grammar and *common usage.*" (Emphasis added.) Webster's New Collegiate Dictionary (1976) defines the verb "offer" as "to declare one's readiness or willingness" when it is used with an infinitive object. In R. C. 2925.03(A)(1), the infinitive object is "to sell a controlled substance." The proscribed conduct is offering *to sell* a controlled substance, not offering the controlled substance. Therefore, our analysis of the statute should not turn on whether appellant transferred a controlled substance.

Rather, R. C. 2925.03 demonstrates a clear legislative intent to define commerce in controlled substances as criminal.

For example: R. C. 2925.03(A)(8) defines *financing* another "for the purpose of selling or offering to sell" controlled substances as criminal; R. C. 2925.03(A)(3) criminalizes the *production* of controlled substances; R. C. 2925.03(A)(2) is directed at the *transportation and distribution* of controlled substances. All of this would serve little purpose if the final stages of commerce were not criminalized as well (*i.e., possession,* R. C. 2925.03[A][4] and [6], as well as *marketing—* offering to sell—and *exchange*—selling, R. C. 2925.03[A][1], [5] and [7] ).

Consistent with this purpose, the General Assembly defined each of these stages of commerce in controlled substances as aggravated trafficking, including R. C. 2925.03(A)(1). Appellant marketed speed. He offered to sell speed to the agent and serve as a link in the chain of supply. By using the phrase "offer to sell" in the disjunctive with "sell" throughout R. C. 2925.03, the General Assembly expressly and properly prohibited appellant's conduct as a form of trafficking in drugs.[2]

## II.

Likewise, appellant's argument that R. C. 2925.03(A)(1) is unconstitutionally vague fails. "All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose* v. *Locke* (1975), 423 U. S. 48, 50. As discussed above, R. C. 2925.03(A)(1) is clear on its face. "Offer" is a common word whose meaning need not be statutorily defined. Therefore, appellant received his fair warning that the Revised Code defines his offering to sell a controlled substance as the crime of aggravated trafficking.

---

[2] In *State* v. *Mosley* (1977), 55 Ohio App. 2d 178, the lead opinion stated, at 183:

" * * * The fact that defendant did not *actually produce* heroin is no more pertinent to the prosecution of the cause or an element of the crime than would be the requirement that an act of intercourse would be required to obtain a conviction in a charge involving soliciting for prostitution. The statute makes it a crime to *offer* to sell heroin. The defendant made an offer to sell heroin, thereby violating the law. The crime was committed when the offer was made, not when the transaction was consummated. * * * "

Attempt and conspiracy are examples of crimes which do not require completed acts in all instances. See R. C. Chapter 2923; *e.g., State* v. *Marian* (1980), 62 Ohio St. 2d 250.

Accordingly, we affirm the judgment of the Court of Appeals.

*Judgment affirmed.*

CELEBREZZE, C. J., SWEENEY and KRUPANSKY, JJ., concur.

HOLMES, J., concurs in the syllabus and judgment.

W. BROWN and C. BROWN, JJ., dissent.

HOLMES, J., concurring in syllabus and judgment.

I concur in the syllabus in that the trier of the fact may, upon the totality of the facts considered on the issue of scienter, find that the defendant thought that he was offering a controlled substance even though the material which was actually transferred was not a controlled substance.

I concur in the judgment because here the facts show that the defendant "did knowingly offer to sell a controlled substance." The stipulation of facts is that "On September 4th, 1979, at approximately 9:00 p.m. an agent met with the Defendant at Bobbi's Lounge, Fairborn, Ohio. The agent and the Defendant began a general conversation. Shortly thereafter the discussion turned to the topic of drugs, the Defendant and the agent having previously discussed drug sales. At this time the Defendant told the agent that he, the Defendant, could get him some speed. The Defendant did not have any speed in his possession at that time. The agent responded that he was interested in making a buy.

"The Defendant and the agent left Bobbi's Lounge and went to the Continental Lounge in Fairborn, Ohio. At approximately 12:10 a.m. on the 5th of September 1979, the Defendant and the agent and a female juvenile left the Continental Lounge in the agent's automobile and proceeded to the Defendant's home at his, the Defendant's, direction.

"Upon arrival, the agent parked in front of 318 Wallace Drive, Fairborn, Ohio, the Defendant's home; and the Defendant stated he could not quote a price or quantity until after he, the Defendant, saw what his source had. The Defendant got out and went in 308 Wallace Drive, Fairborn, Ohio. The Defendant returned shortly and stated the person had 12 robin eggs 'speed' for $2 a tablet. The agent gave the Defendant

$24, one twenty-dollar bill and one five-dollar bill, the Defendant gave the agent a dollar bill in return."

At the plea hearing, the defendant, upon inquiry by the court, stated as follows:

"On that date, I met with the agent and we were playing pinball and we started discussing drugs and things like that, and I told him that I had heard where that he could buy some speed. So we left there and went to the Continental Lounge, and from there we went over to this girl's house; and I went in and I asked her if she still wanted to get rid of what she told me she wanted to get rid of, and she said, 'Yes.'

"So I took them out to Daryl and the transaction went like that, and I went back in the house and gave the girl the money."

Therefore, the defendant admitted he offered "speed" for sale. He admitted that he knew "speed" was a controlled substance. And the defendant contrarily did not state that he had intended to sell a non-controlled substance.

Under such circumstances, it could be found by the trier of the fact that Scott had the *mens rea* to commit the crime as charged. The mere fact that defendant Scott was duped as much as the agent purchasing the material does not detract from the defendant's *mens rea* at or about the time of the commission of the alleged offense. As correctly pointed out by Judge Kerns, in the Court of Appeals opinion, upon the facts presented in this case, the defendant's "crime was complete before his consummation of the sale of the uncontrolled substance as agent for the buyer and the seller."

Accordingly, I concur in the judgment of the majority herein.

CLIFFORD F. BROWN, J., dissenting. The intent of the defendant Scott was only to offer for sale and to sell that which was actually exhibited, *i.e.,* a non-controlled substance. The record contains no evidence that defendant had the intent to make a sale of an actual controlled substance or had the present ability to effect such a sale. Such a factual posture requires acquittal and discharge of the defendant as a matter of law.

Defendant was charged with "offer[ing] to sell a con-

trolled substance" pursuant to R. C. 2925.03(A)(1). This statute must be "strictly construed against the state, and liberally construed in favor of the accused," as mandated by R. C. 2901.04(A). If the General Assembly had intended to criminalize the offer to sell a substance represented to be a controlled substance, but admittedly not a controlled substance, it could have so specified. This the General Assembly did not do. By finding such an intent, this court indulges in judicial legislation.

This defendant intended only to offer and sell that which was actually exhibited, a non-controlled substance. Despite his false representation that it was a controlled substance, defendant has not violated R. C. 2925.03. The rationale behind this conclusion was cogently expressed by Justice (then Judge) Holmes in his dissent to *State* v. *Mosley* (1977), 55 Ohio App. 2d 178, 186:

" * * * The crime that was committed here was of the nature of larceny by trick, fraudulent sale, or of like kind. There could be no trafficking of a controlled drug on the facts specifically presented here, as there was no controlled drug involved—and what is of greater importance, the defendant knew at the time of offering the ersatz substance for sale that it was not a controlled substance.

" * * *

"However, there was no *mens rea* established here for a finding of a sale of a controlled drug, or for a finding of an attempted sale of such a controlled drug. This was a completed sale of a baking soda mixture, which is not a violation of the criminal code as charged."

*Mosley* and the decision of this court today convert a confidence man, thief, and perpetrator of fraud, such as defendant here, into a drug offender. Scott should have been prosecuted and convicted of theft, as proscribed in R. C. 2913.02, as follows:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either:

" * * *

"(3) By deception; * * * "

R. C. 2913.01(A) defines "deception" to fit the conduct of defendant Scott.

The conclusion that defendant Scott committed no drug offense is consistent with the statutory construction statutes applicable here, namely, R. C. 1.47 which requires that "[a] just and reasonable result is intended" in enacting a statute, and R. C. 1.49 which requires that "[i]f a statute is ambiguous, the court, in determining the intention of the legislature, may consider * * * [t]he object sought to be attained," and "[t]he consequences of a particular construction." The purpose, result and object sought to be attained by the General Assembly could not be to turn the crime of theft by deception into the more serious drug offense.

W. BROWN, J., concurs in the foregoing dissenting opinion.