DECISION AND JOURNAL ENTRY
Appellant, Jonathan A. Osborne, appeals from his conviction in the Medina County Court of Common Pleas. We affirm.
As part of an undercover investigation by the Wadsworth Police Department in Medina County, Ohio, Jessica Seymour, a paid confidential informant, made several tape-recorded phone calls from the Wadsworth Police Department to suspected drug dealers. Seymour believed that she might be able to purchase marijuana from Osborne because Osborne had been present at Jason Brasty's residence during a previous controlled buy between Seymour and Brasty. Consequently, on December 16, 1998, Detective James Wilcox of the Wadsworth Police Department had Seymour telephone Osborne with a request to buy marijuana in order to ascertain whether Osborne was trafficking in drugs.
Seymour testified that Osborne told her that he would try to obtain a bag of marijuana that night and that she should call him back in a few minutes.[1] At the time Seymour called Osborne, she did not know who Osborne's source for the marijuana would be. At one point during the conversation, Osborne had to ask Seymour the price of the marijuana and can be heard on the tape saying, "I don't buy it [marijuana]. I don't smoke it."
Osborne then contacted Jason Brasty. When Seymour called Osborne back, Osborne informed her that she could purchase some marijuana from Jason Brasty, from whom Seymour had previously purchased marijuana. The conversations between Seymour and Osborne were recorded, and the audiotapes were played for the jury and admitted into evidence. During the second telephone conversation, the following exchange can be heard:
Seymour: Did you get it?
Osborne: He [Jason Brasty has] got it.
Seymour: Does he?
Osborne: Yeah.
Seymour: Is he at home?
 Osborne: Yeah. Well He was going to go to Barberton, but he told me to page you before I come and he'd call right back.
Seymour: Okay.
 Osborne: Can you call back in just a couple [of minutes]?
Subsequently, Seymour telephoned Brasty, who told her that he had just finished speaking with Osborne and confirmed that he (Brasty) had marijuana for sale. During their conversation, Seymour and Brasty agreed upon price and quantity. They also discussed the quality of the marijuana, which was "good as always" according to Brasty. Brasty later testified at trial that he did not have anyone soliciting for him and that he generally worked on his own.
Originally, Seymour had arranged to pick up Osborne on her way to Brasty's residence. Another confidential informant, Shawntell Kennedy, was also going to go with Seymour. Due to safety concerns, Detective Wilcox had Seymour call Osborne back and tell him that she was not going to pick him up and take him to Brasty's residence. On tape, Seymour and Osborne can be heard saying:
 Seymour: What I am going to do. I don't have much time.
Osborne: Yeah.
Seymour: I am just going to run there and get it.
Osborne: Alright.
 Seymour: [Indiscernible.] I really appreciate you setting it up for me.
 Osborne: Alright, well you'd better hurry because they're going to be leaving at eight.
Seymour: I know hon. I appreciate it. I really do.
Osborne: Yeah.
Seymour: Thank you for your help.
Osborne: Yeah.
Seymour and Kennedy were then searched, fitted with recording devices, and provided with buy money, which money had previously been photocopied. They then drove to Brasty's residence and purchased $60 worth of marijuana. Osborne was not present at this transaction. Later, the marijuana was analyzed and confirmed to be marijuana, weighing 6.75 grams.
On March 3, 1999, the Medina County Grand Jury indicted Osborne on a single count of trafficking in drugs, specifically marijuana, in violation of R.C. 2925.03(A) and (C)(3)(a), a fifth degree felony. A two-day jury trial was held, commencing on May 26, 1999. At the close of the State's evidence, Osborne made a motion for acquittal, pursuant to Crim.R. 29, which motion was denied by the trial court. Osborne chose not to testify and did not present any witnesses in his defense. In its charge, the trial court instructed the jury on the offense contained in the indictment and also instructed that Osborne could be found guilty as an aider or abettor. In a verdict journalized on June 8, 1999, the jury found Osborne guilty of trafficking in marijuana. He was sentenced accordingly on August 16, 1999. This appeal followed.
Osborne asserts one assignment of error:
 THE APPELLANT'S CONVICTION FOR TRAFFICKING IN MARIJUANA WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
Osborne asserts that his conviction for trafficking in marijuana was against both the sufficiency and the manifest weight of the evidence. An evaluation of the weight of the evidence, however, is dispositive of both issues in this case.
As a preliminary matter, we note that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 387.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe
(1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
"While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), Summit App. No. 19600, unreported, at 3, citing Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.
(Emphasis omitted.) State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4.
Osborne was found guilty of trafficking in marijuana, in violation of R.C. 2925.03(A) and (C)(3)(a). R.C. 2925.03(A) states that "[n]o person shall knowingly sell or offer to sell a controlled substance." Further, if the drug involved in the violation of R.C. 2925.03(A) is marijuana, then the defendant is guilty of trafficking in marijuana, which is a felony of the fifth degree.[2] R.C. 2925.03(C)(3)(a).
At trial, the State argued that Osborne knowingly aided and abetted Jason Brasty in the trafficking of marijuana and, therefore, was an accomplice pursuant to R.C. 2923.03. R.C.2923.03(A)(2) provides in pertinent part that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" Further, "[w]hoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
Moreover, "[a] person can `offer to sell a controlled substance' in violation of R.C. 2925.03(A)(1) without transferring a controlled substance to the buyer." State v. Scott (1982),69 Ohio St.2d 439, syllabus. The Ohio Supreme Court has indicated that a defendant who offers to provide a controlled substance as a "link in the chain of supply" is guilty of "offering to sell" in violation of R.C. 2925.03. Scott, 69 Ohio St.2d at 441. In "link in the chain of supply" situations surrounding the sale of drugs, all links in the chain of supply are equally culpable. State v.Jones (Jan. 12, 2000), Lorain App. No. 98CA007057, unreported, at 12, citing State v. Latina (1984), 13 Ohio App.3d 182, 187.
In the present case, Osborne contends that his conviction should be reversed because the State did not prove that he sold or offered to sell marijuana. He argues that he was not the middleman as the State contends, because the drug sale could have occurred without his participation, as Seymour already knew Jason Brasty and could have purchased the marijuana directly from him.
However, there is evidence in the record which, if believed, would establish beyond a reasonable doubt that Osborne aided and abetted Brasty in the sale of marijuana to the two confidential informants, thus establishing culpability pursuant to R.C.2925.03. Seymour testified that on December 16, 1998, she telephoned Osborne to see if he knew where she could get some marijuana or if she could buy it from him. Seymour testified that before she called Osborne, she did not know who his source for the marijuana would be. According to Seymour's testimony, Osborne told her that he would try to get her a bag of marijuana that night and asked her to call him back in a few minutes.
Jason Brasty testified that he spoke with Osborne concerning selling a bag of marijuana to Seymour, which marijuana she and another confidential informant eventually purchased later that night. Seymour further testified that when she called Osborne back, Osborne told her that Brasty would sell her marijuana. The audiotape of the second telephone conversation substantiates this testimony. On tape, Osborne can be heard admonishing that Seymour should hurry because Brasty would be leaving for Barberton soon.
Although Osborne was not present at the sale, the original plans included Seymour and Kennedy picking up and driving Osborne to Brasty's residence, but because of safety concerns, Seymour called Osborne and canceled these plans at the behest of Detective Wilcox. On that night, Seymour and Kennedy purchased 6.75 grams of marijuana from Brasty. Based on our review of the entire record, we cannot say that the jury clearly lost its way and acted against the manifest weight of the evidence in concluding that Osborne aided and abetted Brasty in the sale of marijuana to Seymour and Kennedy. Consequently, we conclude that Osborne's assertion that the State did not produce sufficient evidence to support a conviction, therefore, is also without merit. SeeRoberts, supra, at 4.
Osborne's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
FOR THE COURT, SLABY, J., CARR, J., CONCUR.
[1] This conversation was recorded, and the audiotape was played for the jury and admitted into evidence, but the vast majority of this conversation is unintelligible, including her asking Osborne for drugs and his response to the question.
[2] Trafficking in marijuana is a felony of the fifth degree, except as otherwise provided in division (C)(3)(b), (c), (d), (e), (f), or (g) of R.C. 2925.03. See R.C. 2925.03(C)(3)(a).