JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Gregorio Pimental ("Pimental"), appeals his conviction for drug trafficking. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2003, Pimental was reindicted for engaging in a pattern of corrupt activity, trafficking drugs, with a major drug offender's specification, possession of drugs, possession of criminal tools, two counts of conspiracy to commit drug trafficking, and tampering with records.[1] The matter proceeded to a bench trial, where the following evidence was presented.
 {¶ 3} Pimental, a.k.a. Rolando Gonzalez, met James Smith ("Smith") in late 1999, and Smith began selling drugs for him. In 2001, Smith ceased working for Pimental and ended communication with him.
 {¶ 4} In late 2001, Cleveland Police Detective James Cudo ("Cudo"), learned of cocaine trafficking in the Garden Valley Estates of CMHA. In 2002, Special Agent James Waldron ("Waldron") of the U.S. Department of Housing and Urban Development, began an investigation targeting Smith.
 {¶ 5} In June 2002, search warrants were executed at two homes owned by Smith on Scarborough Road in Cleveland Heights and Merrygold Avenue in Warrensville Heights. At the Scarborough Road home, they found Smith, a coffee grinder with heroin residue, and a duffle bag belonging to Pimental, which contained a car title in the name of Rolando Gonzalez. A birth certificate for Rolando Gonzalez was also found in the search. At the Merrygold Avenue address, officers found a shoe box containing six bars of soap (commonly used to mask the scent of drugs) and 780 unit doses of heroin.
 {¶ 6} After evidence was discovered pertaining to Pimental, he became the focus of the investigation. Waldron used Smith as an informant, and Smith made phone calls to Pimental. These phone conversations were monitored and recorded. During the course of these conversations, Smith attempted to rekindle a drug-selling business with Pimental. Although Pimental seemed skeptical of Smith's loyalty, he nevertheless agreed to deliver "two or three" kilograms of cocaine to Smith. During their final conversation, Smith and Pimental arranged to meet at the Merrygold Avenue address.
 {¶ 7} Smith and Waldron met Pimental at the Merrygold Avenue address. Although Pimental had no drugs on his person or in his vehicle, a search of the vehicle revealed a hollow compartment inside the driver's side door, to which a drug-sniffing dog "alerted."
 {¶ 8} The trial court found Pimental guilty of trafficking drugs with a major drug offender specification and tampering with records. The court sentenced him to eleven years in prison. Pimental appeals, raising four assignments of error.[2]
 Ineffective Assistance of Counsel {¶ 9} In his first assignment of error, Pimental argues that he was deprived of his constitutional right to the effective assistance of counsel.
 {¶ 10} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard or reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378,388-389, 2000-Ohio-448, 721 N.E.2d 52, citing Strickland, supra, at 687-688.
 {¶ 11} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976),45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910, 57 L. Ed. 2d 1154,98 S. Ct. 3135; State v. Calhoun, 86 Ohio St.3d 279, 289, 1999-Ohio-102,714 N.E.2d 905.
 {¶ 12} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; Strickland, supra, at 686.
 {¶ 13} The failure to prove either prong of the Strickland twopart test makes it unnecessary for a court to consider the other prong.Madrigal, supra, at 389, citing Strickland, supra, at 697.
 {¶ 14} In the instant case, Pimental claims that his trial counsel was ineffective for several reasons, including failing to file motions to suppress or to object regarding statements that he allegedly made, failing to call witnesses to elicit exculpatory evidence, and failing to object to testimony speculating about actions or inactions taken by Smith or Pimental. For each of these arguments, Pimental has failed to demonstrate how he was prejudiced by these alleged deficiencies, such that the outcome of the trial would have been different.
 {¶ 15} With regard to the failure to file a motion to suppress, generally, trial counsel's failure to file a motion to suppress does not per se constitute ineffective assistance of counsel. Kimmelman v.Morrison (1986), 477 U.S. 365, 384; State v. Nields, 93 Ohio St.3d 6, 34,2001-Ohio-1291. A criminal defendant asserting a claim of ineffective assistance on this basis must show that the failure to file the motion to suppress caused him prejudice. State v. Robinson (1996),108 Ohio App.3d 428, 433, 670 N.E.2d 1077. The burden is on the appellant to point to evidence in the record supporting the suppression of evidence.
"A failure to file a motion to suppress may constitute ineffectiveassistance of counsel where there is a solid possibility that the courtwould have suppressed the evidence. State v. Garrett (1991),76 Ohio App.3d 57, 600 N.E.2d 1130. However, even when some evidence inthe record supports a motion to suppress, we presume that defense counselwas effective if `the defense counsel could reasonably have decided thatthe filing of a motion to suppress would have been a futile act.' Statev. Edwards (July 11, 1996), Cuyahoga Co. App. No. 69077, unreported,citing State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.See, also, Strickland , supra, at 689." State v. Dotson (Mar. 27, 1998),Pickaway App. No. 97 CA 9.
 {¶ 16} Pimental has failed to direct this court to any evidence in the record to support a motion to suppress. Although he quotes a section from the trial transcript, he does not establish why this evidence should have been suppressed, so that a "solid possibility" existed that the trial court would have suppressed the evidence. Garrett, supra.
 {¶ 17} The decision whether to call witnesses is a tactical decision which is within reasonable trial strategy. Although Pimental lists the names of the purported witnesses he claims his trial counsel should have called to testify, he fails to reveal what testimony the witnesses would have offered. His mere conclusion that the witnesses' testimony would have affected the outcome of the trial is insufficient to satisfy his burden of proving that his trial counsel was ineffective.
 {¶ 18} Pimental also argues that his trial counsel was ineffective for failing to file a motion for discovery or bill of particulars. The State contends that his counsel filed such requests under the original indictment. However, the record pertaining to the original indictment was not transmitted to this court and the record in the instant case is devoid of any evidence that his counsel sought discovery or requested a bill of particulars. Nevertheless, Pimental has failed to establish that but for his trial counsel's alleged deficiencies, the result of the trial would have been different. Regardless whether counsel's failure to seek discovery or request a bill of particulars fell below an objective standard of reasonableness, Pimental has failed to demonstrate how this alleged failure prejudiced him, how these motions would have affected the court in weighing the evidence, or how his trial counsel's strategy would have changed. In the absence of such a demonstration, we cannot say with a reasonable probability that but for trial counsel's failure to seek discovery and a bill of particulars, the result of the trial would have been different.
 {¶ 19} Moreover, in a bench trial where the trial judge acts as the trier of fact, a reviewing court will presume that the trial court acted impartially and considered only properly admitted evidence. Columbus v.Guthmann (1963), 175 Ohio St. 282, 194 N.E.2d 143, paragraph three of the syllabus; see, also, State v. Post (1987), 32 Ohio St.3d 380, 384,513 N.E.2d 754, quoting State v. White (1968), 15 Ohio St.2d 146, 151,239 N.E.2d 65.
 {¶ 20} Having found that Pimental failed to demonstrate how he was prejudiced by his trial counsel's actions or inactions, we cannot say that his trial counsel was ineffective.
 {¶ 21} Accordingly, the first assignment of error is overruled.
 Trafficking Charge {¶ 22} In his second assignment of error, Pimental argues that the trial court erred in finding him guilty of an "anticipatory" trafficking violation under R.C. 2925.03. He claims that the evidence did not show that he committed an actual crime and that it is not a crime to "think about doing a wrong." Pimental is essentially making a sufficiency of the evidence argument.
 {¶ 23} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380, 390,1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 24} In order to be found guilty of drug trafficking under R.C.2925.03(A)(1), the State must prove that the defendant knowingly sold or offered to sell a controlled substance. In order to prove an offer to sell, all that is required is evidence of a willingness to transfer the controlled substance to another person. State v. Esposito (Dec. 30, 1994), Medina App. No. 2337-M, citing State v. Scott (1982),69 Ohio St.2d 439, 440, 432 N.E.2d 798.
 {¶ 25} The Scott court noted that "offer" means to "`to declare one's readiness or willingness'" to sell a controlled substance. Scott, supra, at 440. In "offering to sell," the proscribed conduct is the offer to sell, not the offering of a controlled substance. Id. An offer is the marketing stage of the entire criminal enterprise of commerce in controlled substances. Id. at 441. Therefore, the crime of offering to sell a controlled substance is committed when the offer is made, not when the transaction is consummated. State v. Mosley (1977),55 Ohio App.2d 178, 183, 380 N.E.2d 731.
 {¶ 26} In the instant case, it is undisputed that Pimental did not sell any controlled substance. However, there is sufficient evidence to prove that he did offer to sell a controlled substance. Smith testified and the recorded conversations confirm that Pimental was ready and willing to provide drugs to Smith.
 {¶ 27} During the conversations, the parties established the amount of drugs that Pimental would supply to Smith for selling as "two or three." Smith testified that the phrase meant two or three kilos of cocaine. The parties also established the time and place for delivery, at the Merrygold Avenue residence. The totality of the recorded conversations demonstrated that Pimental and Smith were arranging to "do what we used to do." Smith testified that it meant that Pimental "would bring drugs in and our plan to meet and where to pick them up * * *."
 {¶ 28} Although no drugs were in Pimental's possession at the time of his arrest, possession of a controlled substance is not a necessary element of drug trafficking. Therefore, viewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence to convict Pimental of drug trafficking.
 {¶ 29} Accordingly, the second assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 30} In his third assignment of error, Pimental argues that his conviction was against the manifest weight of the evidence.
 {¶ 31} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of the greater amountof credible evidence offered in a trial, to support one side of the issuerather than the other. It indicates clearly to the jury that the partyhaving the burden of proof will be entitled to their verdict, if, onweighing the evidence in their minds, they shall find the greater amountof credible evidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on its effectin inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidence and allreasonable inferences, considers the credibility of witnesses anddetermines whether in resolving conflicts in the evidence, the juryclearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised only in theexceptional case in which the evidence weighs heavily against theconviction." Id. at 387.
 {¶ 32} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. Eley
(1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Additionally, circumstantial evidence and direct evidence inherently possess the same probative value and, therefore, should be subjected to the same standard. Jenks, supra.
 {¶ 33} Upon review of the evidence presented at trial, we find that the trial court did not lose its way when it found Pimental guilty of drug trafficking. In the instant case, the evidence was uncontroverted that Pimental and Smith arranged a meeting for Pimental to bring Smith "two or three," which referred to two or three kilos of cocaine. The taped conversations presented substantial circumstantial evidence for the court to conclude that Pimental and Smith previously engaged in drug trafficking, that Pimental was wary of trusting Smith, and the parties were preparing to reestablish their working relationship. Therefore, Pimental's conviction for drug trafficking was not against the manifest weight of the evidence.
 {¶ 34} Pimental attempts to raise the issue of entrapment for the first time on appeal. Entrapment is an affirmative defense under R.C.2901.05(C)(2), which must be raised at trial, or it is waived. State v.Robertson (Dec. 14, 1999), Jefferson App. No. 97 JE 41, citing State v.Jackson (1983), 13 Ohio App.3d 416, 469 N.E.2d 872. Pimental failed to raise the entrapment defense at trial; therefore, he has waived this defense on appeal.
 {¶ 35} Accordingly, the third assignment of error is overruled.
 Speedy Trial {¶ 36} In his final assignment of error, Pimental argues that the trial court erred in denying his request to dismiss the charges because his speedy trial rights were violated.
 {¶ 37} When considering any argument raised on appeal, a reviewing court is limited to considering only those matters found in the record.Volodkevich v. Volodkevich (1989), 48 Ohio App.3d 313, 314,549 N.E.2d 1237. Furthermore, the appellant has the duty to provide a reviewing court with a record of the facts, testimony, and evidentiary matters which are necessary to support the appellant's assignments of error. Id. See, also, App.R. 9(B) and 10(A). In the absence of such evidence within the record, this court must presume the regularity of the proceedings below. Id.; Baltz v. Richards, Cuyahoga App. No. 81300, 2003-Ohio-560, discretionary appeal denied, 99 Ohio St.3d 1436,2003-Ohio-2902, 789 N.E.2d 1117; Rose Chevrolet, Inc. v. Adams (1988),36 Ohio St.3d 17, 19-20, 520 N.E.2d 564.
 {¶ 38} In the instant case, Pimental failed to transmit the record of the original indictment under Case No. CR-429438, in which he initially made his motion to dismiss for lack of speedy trial. Although he renewed this motion in the instant case on the day of trial, the record in the instant matter, alone, is insufficient for this court to consider his speedy trial argument. We, therefore, presume the regularity of the proceedings below.
 {¶ 39} A defendant's right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution and is made obligatory on the states by the Fourteenth Amendment. Klopfer v.North Carolina (1967), 386 U.S. 213. Article I, Section 10 of the Ohio Constitution, also affords an accused the same guarantees as the Sixth
and Fourteenth Amendments. See State v. Butler (1969), 19 Ohio St.2d 55,249 N.E.2d 818.
 {¶ 40} R.C. 2945.71(C)(2) provides that a person charged with a felony must be brought to trial within 270 days after his arrest. Section(E) provides that if a person is held in jail in lieu of bail, then each day is to be counted as three days, i.e., "triple count." However, the triple-count provision applies only when the person is being held in jail solely on the pending charge. State v. Gray (1964), 1 Ohio St.2d 21,203 N.E.2d 319.
 {¶ 41} Pimental was reindicted on August 26, 2003 and arrested on August 28. The record is devoid of any evidence that Pimental was being held in jail on any other charge except the pending case, thus, the triple-count provision applied. Accordingly, Pimental had to be brought to trial within ninety days of his arrest, unless tolled by an exception under R.C. 2945.72. Even without tolling any period of time, he was brought to trial within 90 days of his arrest because trial commenced on October 28.
 {¶ 42} Therefore, the speedy trial rights were not violated, and the trial court correctly denied the motion to dismiss.
 {¶ 43} Accordingly, the final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J. and Sweeney, J. concur.
[1] Pimental was originally indicted under Case No. CR-429438 in 2002. The State dismissed that case without prejudice on August 20, 2003.
[2] Pimental raises no argument challenging his conviction for tampering with records. Therefore, that conviction is not part of this appeal.