[Cite as *State v. Byrd*, 2019-Ohio-1667.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-22 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-73 |
| | : | |
| MICHAEL W. BYRD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of May, 2019.

. . . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

SAMANTHA L. BERKHOFER, Atty. Reg. No. 0087370, 202 North Limestone Street, Suite 250, Springfield, Ohio 45502
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Michael Byrd appeals from the trial court's judgment convicting him of aggravated drug trafficking and aggravated possession of drugs. He contends that the State did not present evidence sufficient to sustain the conviction for aggravated possession of drugs. We conclude there is evidence in this record upon which a reasonable juror could determine that the essential elements of the offense were established by the State. Accordingly, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

{¶ 2} Following complaints concerning a man selling drugs in Xenia, the Agencies for Combined Enforcement Task Force (hereinafter "ACE") began conducting surveillance of an area near the Xenia bike path and a McDonald's restaurant. After observing Byrd on the bike path, members of ACE decided to use an undercover detective to attempt drug purchases from Byrd.

{¶ 3} On January 3, 2018, an undercover officer approached Byrd on the bike path. The officer and Byrd engaged in a conversation following which they both entered a nearby Wendy's restaurant. While inside the restaurant, the officer gave Byrd $20 in exchange for which Byrd handed the officer a gum wrapper. The wrapper was determined to contain methamphetamine.

{¶ 4} On January 4, 2018, the same undercover officer again approached Byrd near the bike path. The officer indicated that he wanted additional methamphetamine. Again, the two went into Wendy's. Thereafter, the officer gave Byrd $40 and Byrd gave the officer a substance wrapped in a piece of toilet paper. The substance did not contain

any controlled substance.

{¶ 5} Byrd was indicted on the following offenses:  Counts I and III, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1); and Count II aggravated possession of drugs in violation of R.C. 2925.11(A).   Following a jury trial, Byrd was convicted on all counts.   A sentencing hearing was conducted on May 23, 2018.   At that time, the trial court merged Counts I and II for purposes of sentencing and the State elected to proceed on Count I.   The court imposed prison sentences of 17 months on Count I and 17 months on Count III.   The court ordered the sentences to be served consecutively, for an aggregate sentence of 34 months.

{¶ 6} Byrd appeals.


## II.    Analysis

{¶ 7} Byrd's sole assignment of error states as follows:

WHETHER THERE WAS SUFFICIENT EVIDENCE FOR THE JURY TO

FIND MR. BYRD GUILTY OF AGGRAVATED POSSESSION OF DRUGS

IN VIOLATION OF R.C. 2925.11?

{¶ 8} Byrd contends that the State did not present evidence sufficient to sustain the conviction for aggravated possession.   In support, he argues that the record demonstrates that no controlled substances were in the toilet paper given to the undercover officer on January 4, 2018.   In his assignment of error, he also employs language indicating that he contests whether the conviction was supported by the weight of the evidence.

{¶ 9} A sufficiency of the evidence analysis focuses upon whether the prosecution

presented adequate evidence, viewing such evidence in the light most favorable to the prosecution, to sustain the verdict. *State v. Radford*, 2d Dist. Clark No. 2016-CA-80, 2017-Ohio-8189, ¶ 14. The prosecution has presented sufficient evidence when "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d (1991), paragraph two of the syllabus.

{¶ 10} A manifest weight analysis, in contrast, requires an appellate court to review the record, weigh the evidence and any reasonable inferences allowed by the evidence, consider witness credibility, and determine whether the trier of fact, in resolving any evidentiary conflicts, "clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered." *Radford* at ¶ 15. This consideration of the evidence must be exercised with caution so that a new trial will only be granted "in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Though different legal concepts are involved, if it is concluded that a verdict is supported by the manifest weight of the evidence, the evidence, by necessity, is legally sufficient. *Id.* at ¶ 16.

{¶ 11} Byrd was indicted on two counts of aggravated trafficking in drugs, which is proscribed by R.C. 2925.03. That statute states, in pertinent part, that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance or a controlled substance analog." R.C. 2925.03(A)(1). He was also indicted on one count of aggravated possession of drugs in violation of R.C. 2925.11(A), which states that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance

analog." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 12} We first note that the indictment clearly states that Counts I (trafficking) and II (possession) concern the drug transaction that occurred on January 3, 2018, while Count III (trafficking) concerns the transaction of January 4, 2018. Thus, the only charge filed in connection with the January 4 transaction, in which no actual drugs were exchanged, was aggravated trafficking. There was no charge for possession of drugs in connection with the January 4 transaction. Therefore, it appears that Byrd misapprehends the facts of the case and that his appeal has no merit. However, we will nonetheless review the convictions from both a sufficiency and a manifest weight perspective.

{¶ 13} The record contains testimony of several members of the ACE team concerning the controlled buys by the undercover officer. This testimony demonstrated that the officer met with Byrd on two occasions, paid him money, and in return received, respectively, a gum wrapper containing a substance later determined to be methamphetamine and a piece of toilet paper with a substance that was determined not to contain a controlled substance.

{¶ 14} The undercover officer also testified. He testified that, on January 3, 2018, he was assigned to work with the ACE task force. On that date, he was transported to the Xenia bike path between Wendy's and McDonald's. The undercover officer was wearing old clothing and was walking with a cane. He testified that he approached Byrd

and engaged in casual conversation; Byrd asked whether the undercover officer was a police officer.   Eventually, the undercover officer informed Byrd that he had hurt his back and was looking for some ice.[1]   Byrd told the officer to accompany him to the Wendy's. Once in Wendy's, the undercover officer sat at a table while Byrd purchased coffee. When Byrd came to the table, he gave the coffee and a foil gum wrapper to the officer, who then gave Byrd $20, and Byrd left.   The undercover officer then left and turned the wrapper over to other members of the investigation.

{¶ 15} The undercover officer testified that, on the next day, January 4, he again approached Byrd on the bike path; he told Byrd that the ice he received the day before was good and that he wanted more.   Byrd asked the undercover officer how much money he had, and the officer replied that he had $40.   Byrd again directed the officer to go into Wendy's.   The two went into Wendy's, sat at the same table as the previous day, and Byrd again purchased coffee.   While at the table, the undercover officer handed Byrd the money, and Byrd stated that he was going into the restroom in order to "break a piece off."   Tr. p. 131.   When Byrd returned to the table, he placed a substance wrapped in toilet paper into the undercover officer's glove, which was sitting on the table.   Byrd left the restaurant first.   After leaving the restaurant, the undercover officer turned the toilet paper over to other investigators.

{¶ 16} Jennifer Watson, a forensic chemist with the Miami Valley Regional Crime Laboratory, testified that she conducted testing on both substances given to the undercover officer.   According to Watson, the substance in the gum wrapper was methamphetamine.   However, Watson testified that the substance in the toilet paper was

---

[1] According to the record, "ice" is a slang term for methamphetamine.

not a controlled substance.

{¶ 17} Based upon this evidence, we conclude that the State presented evidence sufficient to support the convictions for Counts I and II regarding the drug transactions conducted on January 3, as well as for Count III, regarding the trafficking transaction conducted on January 4. Additionally, we cannot say the jury lost its way in convicting Byrd. The record supports a finding that on January 3 Byrd possessed and sold methamphetamine to the undercover officer. The record also demonstrates that on January 4, the undercover officer asked Byrd for additional methamphetamine, and that Byrd sold him a substance after indicating that he was going to break off a piece of methamphetamine. The jury could have reasonably inferred, based upon the previous transaction and Byrd's actions on January 4, that he sold what he claimed to be methamphetamine. Further, the fact that Byrd sold the undercover officer something other than a controlled substance during the January 4 encounter does not affect his conviction for aggravated trafficking. This court has previously stated that "if the seller, in offering his product for sale, purports it to be a controlled substance, then he or she has knowingly offered for sale a controlled substance in spite of the fact that the seller knows the product is counterfeit or fake." *State v. Chatman*, 2d Dist. Montgomery No. 17481, 1999 WL 961024 (July 9, 1999), citing *State v. Scott*, 69 Ohio St.2d 439, 440-441, 432 N.E.2d 798 (1982) and *State v. Patterson*, 69 Ohio St.3d 445, 447, 432 N.E.2d 802 (1982).

{¶ 18} Finally, we again note that Byrd was not charged with, or convicted of possession of methamphetamine with regard to the January 4 transaction during which no controlled substance was transferred. Therefore, his argument that he cannot be

guilty of aggravated possession of drugs for that transaction lacks merit.

{¶ 19} Accordingly, the assignment of error is overruled.

### III.    Conclusion

{¶ 20} Byrd's sole assignment of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

Nathaniel R. Luken
Samantha L. Berkhofer
Hon. Michael A. Buckwalter