DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Ron S. Tolliver, appeals from his conviction in the Wayne County Court of Common Pleas for trafficking in crack cocaine. We affirm.
 I. {¶ 2} On May 15, 2002, the Wayne County Grand Jury indicted Mr. Tolliver on one count of trafficking in crack cocaine, in violation of R.C. 2925.03(A)(1). A jury trial followed. After the State rested, Mr. Tolliver moved for an acquittal pursuant to Crim.R. 29(A). The trial court denied his motion. The jury then returned a verdict of guilty, and the trial court sentenced him accordingly. This appeal followed.
 II. {¶ 3} Mr. Tolliver raises four assignments of error for review. To facilitate review, we will address assignments of error one and two together.
 A. First Assignment of ErrorFirst Assignment of Error
"The Evidence At Trial Was Insufficient As A Matter Of Law For A Guilty Verdict."
 Second Assignment of ErrorSecond Assignment of Error
"The Verdict Of Guilty Was Against The Manifest Weight Of The Evidence."
 {¶ 4} In his first and second assignments of error, Mr. Tolliver challenges the adequacy of the evidence produced at trial. Specifically, Mr. Tolliver avers that his conviction for trafficking in crack cocaine was based on insufficient evidence and against the manifest weight of the evidence because the evidence did not demonstrate a principal/agent relationship existed between him and Shawn Campbell. Mr. Tolliver argues that as this relationship was nonexistent, Shawn Campbell was not acting on behalf of Mr. Tolliver when he gave Agent Ellis the crack cocaine, thereby eliminating any connection Mr. Tolliver had with the alleged crime. An evaluation of the weight of the evidence, however, is dispositive of both issues in this case. Mr. Tolliver's first and second assignments of error lack merit.
 {¶ 5} As a preliminary matter, we note that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386.
 {¶ 6} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 7} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When an appellant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 8} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 9} Mr. Tolliver was found guilty of trafficking in crack cocaine, in violation of R.C. 2925.03(A)(1). R.C. 2925.03(A)(1) provides in relevant part that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance[.]" "A person can `offer to sell a controlled substance' in violation of R.C. 2925.03(A)(1) without transferring a controlled substance to the buyer." State v. Scott
(1982), 69 Ohio St.2d 439, syllabus. The Ohio Supreme Court further indicated that a defendant who offers to provide a controlled substance as a "link in the chain of supply" is guilty of "offering to sell" in violation of R.C. 2925.03. Id. at 441. In a "link in the chain of supply" situation surrounding the sale of drugs, every link in the chain of supply is equally culpable. State v. Jones (Jan. 12, 2000), 9th Dist. No. 98CA007057, citing State v. Latina (1984), 13 Ohio App.3d 182, 187.
 {¶ 10} In the present case, Shawn Campbell ("Campbell") testified that he drove Mr. Tolliver, Curtis Malone ("Malone"), and Chris Price ("Price") from Wooster, Ohio to Columbus, Ohio to pick up crack cocaine. Campbell further testified that on the return trip to Wooster he was accompanied by Mr. Tolliver and Price; however, he noted that he subsequently returned to Columbus to pick up Malone. Campbell stated that upon their return to Wooster, Mr. Tolliver, Malone, and Price sold the crack cocaine from a friend's house. He explained that he received crack cocaine as payment for his transportation services.
 {¶ 11} Campbell then stated that he later went to the Medway Drug Enforcement Agency ("MDEA") to speak with an agent concerning his desire to prevent drugs from entering the city of Wooster. He asserted that he spoke with Agent Charles Ellis, a senior agent at the MDEA, and they made arrangements for a "drug deal." Campbell testified that he, Mr. Tolliver, and Malone went to a Citgo gas station pursuant to the arrangement with the MDEA. After arriving at the gas station, Campbell stated that Mr. Tolliver and Malone went into the restroom. Campbell then explained that while Mr. Tolliver and Malone were in the restroom, he spoke with Agent Ellis and informed him that Mr. Tolliver and Malone had the crack cocaine. He further explained that when Mr. Tolliver and Malone exited the restroom, Mr. Tolliver sat in the passenger's seat and Malone sat in the backseat. Campbell stated that he and Mr. Tolliver conversed, and Mr. Tolliver wondered if Agent Ellis was the individual receiving the crack cocaine. Campbell asserted that Mr. Tolliver then gave him the crack cocaine for the exchange, and he then proceeded to Agent Ellis' vehicle to complete the exchange. After completing the exchange, Campbell relayed that he was instructed to "get down" and he was then "grabbed by the police[.]"
 {¶ 12} Campbell did acknowledge that he had some mental health problems, and that he had been drinking "here and there" over the course of the events leading up to the "drug deal." He also admitted that he had made an arrangement with Agent Ellis that he would not be charged with a crime; however, he remarked that he had not been arrested nor investigated for drugs before he approached the MDEA.
 {¶ 13} Agent Charles Ellis testified that he interviewed Campbell regarding his knowledge of incidents of drug trafficking in Wayne County. Agent Ellis then relayed that he had set up a "controlled buy" with Campbell, whereby he would purchase crack cocaine at a Citgo gas station. He stated that the "controlled buy" occurred at 11:30 a.m. and, as this was during the day, he had "good daylight" and "full visibility." Agent Ellis testified that Campbell approached his vehicle at the Citgo gas station and informed him that they had the crack cocaine. He further testified that he saw Mr. Tolliver seated in the passenger's seat and Malone seated in the backseat. Agent Ellis explained that he saw Mr. Tolliver turn toward Campbell and converse with him; however, he did concede that he did not see any hand movements. Agent Ellis explained that after this interaction, Campbell emerged from his vehicle, walked toward Agent Ellis' vehicle, and handed him the crack cocaine.
 {¶ 14} Following the State's final witness and before it rested, both the State and Mr. Tolliver stipulated that Agent Ellis received 1.53
grams of crack cocaine from Campbell on the date of the incident. Mr. Tolliver rested without presenting any evidence or calling any witnesses.
 {¶ 15} After a careful review of the record, we are unable to conclude that the trier of fact lost its way and created a manifest miscarriage of justice when convicting Mr. Tolliver of trafficking in crack cocaine. Consequently, we conclude that Mr. Tolliver's assertion that the State did not produce sufficient evidence to support a conviction is also without merit. Accordingly, Mr. Tolliver's first and second assignments of error are overruled.
 B. Third Assignment of ErrorThird Assignment of Error
"The Verdict Should Be Reversed Due To Ineffective Assistance Of Trial Counsel, Violating [The Sixth Amendment To The United States Constitution]."
 {¶ 16} In his third assignment of error, Mr. Tolliver contends that his counsel's failure to object to an alleged hearsay statement denied him effective assistance of counsel, in violation of theSixth Amendment to the United States Constitution. As such, he contends that had counsel objected to this statement a "reasonable probability" existed that "there could have been no conviction." Mr. Tolliver's contentions lack merit.
 {¶ 17} The United States Supreme Court enunciated a two-part test to determine whether counsel's assistance was ineffective as to justify a reversal of sentence or conviction. Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674. "First, the defendant must show that counsel's performance was deficient." Id. To show the deficiencies in counsel's performance, a defendant must prove "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, a defendant must establish that counsel's deficient performance resulted in prejudice to the defendant which was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 {¶ 18} Upon reviewing counsel's performance, there is a strong presumption that counsel's actions were part of a valid trial strategy. Id. at 689. We note that there are numerous avenues by which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel.State v. Gales (Nov. 22, 2000), 9th Dist. No. 00CA007541, citing Statev. Clayton (1980), 62 Ohio St.2d 45, 49.
 {¶ 19} Mr. Tolliver asserts that his trial counsel failed to object to an alleged hearsay statement. However, failure to object to error, standing alone, is insufficient to prove ineffective assistance of counsel. State v. Holloway (1988), 38 Ohio St.3d 239, 244. Furthermore, competent counsel may reasonably hesitate to object in the jury's presence because objections tend to disrupt the flow of a trial, and are considered technical and bothersome to the jury. State v.Campbell (1994), 69 Ohio St.3d 38, 53, quoting Jacobs, Ohio Evidence (1989), at iii-iv. Additionally, as we have already determined in a previous assignment of error, substantial evidence existed besides this testimony to support the jury's finding of guilt. Hence, trial counsel's failure to object to this statement did not result in prejudice to Mr. Tolliver. See State v. Walker (June 11, 1997), 9th Dist. No. 17815 (concluding that trial counsel's failure to object to hearsay statements did not result in prejudice to the defendant, as the court previously determined that sufficient evidence existed to support the conviction);State v. Barnes (Aug. 19, 1993) 8th Dist. No. 63476 (stating that there was no indication that the outcome would have been different had trial counsel objected to supposed hearsay statements, as sufficient evidence existed to support the outcome). Mr. Tolliver's third assignment of error is overruled.
 C. Fourth Assignment of ErrorFourth Assignment of Error "[MR. TOLLIVER'S] SENTENCE IS CONTRARY TO LAW." {¶ 20} In his fourth assignment of error, Mr. Tolliver alleges that the sentence imposed by the trial court is contrary to law on two bases: (1) the trial court failed to consider the factors enumerated in R.C. 2929.12; and (2) the trial court considered "crimes not charged or proven." We disagree.
 {¶ 21} When reviewing the propriety of a sentence, an appellate court will not reduce, modify or vacate a defendant's sentence unless the trial court's decision is clearly and convincingly unsupported by the record and/or contrary to law. R.C. 2953.08. Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. The sentence imposed upon the offender should be consistent with the overriding purposes of felony sentencing: "to protect the public from future crime by the offender" and "to punish the offender." R.C. 2929.11(A).
 {¶ 22} When the quantity of crack cocaine is more than one gram but is less than five grams, it constitutes a fourth degree felony, and a presumption of a prison term arises. R.C. 2925.03(C)(4)(c). Further, sentencing law carries a presumption that a defendant who has not previously served a prison term should receive the minimum term. See R.C. 2929.14(B). However, the trial court may impose a sentence exceeding the minimum if it specifies on the record "that the shortest prison term will demean the seriousness of the conduct or will not adequately protect the public from future crime by the offender." Statev. Edmonson (1999), 86 Ohio St.3d 324, 325. See, also, State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, at ¶ 26; R.C. 2929.14(B).
"Except as provided in division (C), (D)(1), (D)(2), or (G) of this section, in [R.C. 2907.02, or in [R.C. Chapter 2925], if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless * * * [t]he court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender[.]" R.C. 2929.14(B)(1).
 {¶ 23} In regard to Mr. Tolliver's allegation that the trial court ignored the factors outlined in R.C. 2929.12, we find to the contrary. The record reveals that the trial court considered the factors enumerated in R.C. 2929.12, as evidenced by its statement that it had "considered * * * the seriousness and recidivism factors relevant to the offense and offender pursuant to R.C. 2929.12[.]" With this pronouncement, we conclude that the trial court satisfied its duty to consider the R.C.2929.12 factors, as "[t]he Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." See State v. Arnett (2000),88 Ohio St.3d 208, 215.
 {¶ 24} We now turn to Mr. Tolliver's allegation that the trial court erroneously considered "crimes not charged or proven[.]" The applicable record that an appellate court can examine when reviewing a sentence includes: (1) the presentence investigative report; (2) the trial court record in the case in which the sentence was imposed; and (3) any oral or written statements made to or by the court at the sentencing hearing. R.C. 2953.08(F)(1)-(3). Regarding the content of presentence investigative reports, the Supreme Court of Ohio has held that allegations, which had not resulted in criminal charges, could be properly included in these reports. State v. Cooey (1989),46 Ohio St.3d 20, 35. The Court found that this information was part of a defendant's social history and worthy of consideration by the courts during the sentencing phase. Id.
 {¶ 25} In this case, the presentence investigative report was made part of the record. Despite Mr. Tolliver's contention that the trial court considered impermissible information, we find that this alleged impermissible information was properly contained in the presentence investigative report; therefore, the trial court could consider it when imposing the sentence. See R.C. 2953.08(F)(1); Cooey,46 Ohio St.3d at 35. Consequently, we cannot say that the trial court erroneously considered "crimes not charged or proven" when imposing sentence.
 {¶ 26} Finally, after considering the circumstances surrounding Mr. Tolliver's offense, the trial court stated on the record "that the minimum sentence would demean the seriousness of the offense[,]" and a sentence in excess of the minimum is needed "to adequately protect the public and to prevent future crime by [Mr. Tolliver] or others who are similarly situated[.]" These statements fully complied with the findings requirement of R.C. 2929.14(B) for imposing a sentence exceeding the minimum sentence. Accordingly, we hold that the trial court's decision as to the length of Mr. Tolliver's sentence was not contrary to law. Mr. Tolliver's fourth assignment of error is overruled.
 III. {¶ 27} Mr. Tolliver's assignments of error are overruled. The conviction in the Wayne County Court of Common Pleas is affirmed.
BAIRD, P.J., CARR, J. CONCUR.