OPINION
{¶ 1} Defendant-appellant Marvin Skinner appeals his convictions and sentences in the Stark County Court of Common Pleas for one count of trafficking in cocaine in violation of R.C. 2925.03 (A)(1)(C)(4)(d) and one count of possession of cocaine in violation R.C. 2925.11(A)(1)(C)(4)(c). The plaintiff-appellee is the State of Ohio.
 {¶ 2} On March 1, 2004 Officer Mark Diels of Canton Police Department arrested Travis Hall (Hall) for receiving stolen property and possession of cocaine. While at police headquarters, Hall provided police with the names of individuals who are involved in drug trafficking including the name of the appellant. Officer Diels recognized appellant's name; just a few weeks prior he had arrested him for possession of cocaine. Further, Hall told police he could buy cocaine from appellant and agreed to telephone him and set up a drug deal.
 {¶ 3} Hall called the appellant from police headquarters on his personal cell-phone. Officer Diels however was not able to record the conversation. However, Officer Diels was present during the call; however he was not able to hear appellant's end of the conversation. After listening to Hall's end of the conversation and speaking with Hall, Officer Diels learned that approximately ten minutes later appellant was going to deliver cocaine to Hall at the Citgo station located at 2612 Cleveland Avenue S.W., Canton, Stark County, Ohio. The Citgo station was the meeting place where Hall usually met appellant to buy drugs. The police were informed that appellant would be driving a white Cadillac and would be accompanied by a female. The cocaine would either be hidden on the female or appellant. Previously, appellant had been driving a white Cadillac when Officer Diels arrested him for drug possession. Additionally, the police knew the appellant lived very close to the Citgo station.
 {¶ 4} After Hall set up the drug deal, Officer Diels and several other police officers went to the Citgo station and set up a parameter. After waiting a few minutes they observed appellant driving a white Cadillac. Appellant pulled the Cadillac into the Citgo station. When appellant got out of his car, the officers surrounded him, drew their weapons, ordered him to the ground and handcuffed him. An adult female and a six year old child were passengers in the Cadillac. As appellant was being handcuffed he stated that he knew it was a set up and that the "bitch" set him up. The officers did not observe a drug transaction and did not see any evidence that appellant possessed cocaine. A pat-down search of appellant revealed neither drugs nor weapons. Appellant was handcuffed and placed in the rear of the one of the police cruisers. A canine officer and his handler conducted a drug sweep around the Cadillac. The canine "indicated" on the front passenger of the Cadillac.
 {¶ 5} The Citgo station was busy with customers. Accordingly, the officers decided to move everyone and all vehicles out of the view of the public approximately twenty to fifty yards away behind a nearby car wash.
 {¶ 6} During this time the officers observed appellant moving his whole body around inside of the cruiser. Accordingly, officers had appellant get out of the cruiser and conducted a more thorough pat-down search. During this pat-down, Officer Diels felt a large bulge between appellant's butt cheeks. Once Officer Diels felt the bulge, appellant told him he would remove the drugs for him and did so. From appellant's pants, police collected a large bag of powdered cocaine. This bag had a hole in it and officers notice that some of the cocaine had spilled out of the bag, down appellant's leg and onto the pavement. Police also confiscated $483 which tested positive for cocaine residue and a cell phone from appellant's person.
 {¶ 7} Appellant filed a motion to suppress claiming that the cocaine was the product of an unlawful arrest and search. The trial court conducted an evidentiary hearing on May 5, 2004. In its Judgment Entry dated May 13, 2004, the trial court denied appellant's motion to suppress.
 {¶ 8} Appellant waived his right to a jury trial and the case was tried to the court on May 20, 2004. After the prosecution rested its case appellant moved for acquittal on the charge of trafficking. The court overruled appellant's motion.
 {¶ 9} The trial court found appellant guilty of trafficking in cocaine and possession of cocaine. In its May 27, 2004 Judgment Entry, the trial court sentenced appellant to a prison term of four years on each charge to be served concurrently. The trial court also fined appellant $1,000 and suspended his driver's license for four years.
 {¶ 10} Appellant timely appealed and raises the following three assignments of error for our consideration:
 {¶ 11} "I. BECAUSE THE POLICE OFFICERS DID NOT HAVE PROBABLE CAUSE TO ARREST APPELLANT, THE TRIAL COURT ERRED IN OVERRULING HIS MOTION TO SUPPRESS.
 {¶ 12} "II. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT APPELLANT'S CONVICTION FOR TRAFFICKING IN COCAINE.
 {¶ 13} "III. APPELLANT'S CONVICTION FOR TRAFFICKING IN COCAINE WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 I. {¶ 14} In his First Assignment of Error, appellant claims the trial court erred in denying his motion to suppress. We disagree.
 {¶ 15} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 485; Statev. Guysinger (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623,620 N.E.2d 906; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657,1663, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 16} Appellant argues that the police did not have probable cause to believe that appellant had committed, or was about to commit a felony.
 {¶ 17} "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact". Ornelas v. United States
(1996), 517 U.S. 690, 695-96, 116 S.Ct. 1657, 1661-62. In general, we review determinations of historical facts only for clear error. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 698, 116 S.Ct. at 1663. On the other hand, determinations of reasonable suspicion and probable cause are reviewed de novo. Id.
 {¶ 18} The first issue is whether the factual findings, as determined by the lower court at the evidentiary hearing on the motion to suppress evidence, were clearly erroneous. "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."United States v. United States Gypsum Co. (1947), 333 U.S. 364,395. Moreover, where the evidence would support several conclusions but the lower court has decided to weigh more heavily in one direction, "[s]uch a choice between . . . permissible views of the weight of evidence is not `clearly erroneous'."United States v. Yellow Cab Co. (1949), 338 U.S. 338, 342. In the case at hand, testimony of various witnesses presented conflicting stories. Specifically, there was conflicting testimony with regard to whether the police were conducting aTerry-search or whether the police officers effectively arrested appellant the moment they took him to the ground and handcuffed him. (ST. May 5, 2004 at 51-53; 87-90).
 {¶ 19} The trial court implicitly found via its Judgment Entry overruling appellant's motion to suppress that the appellant had been arrested after he stepped out of his car, was taken to the ground, and handcuffed by the officers. (Judgment Entry, May 13, 2004).
 {¶ 20} We conclude that the trial court's factual findings do not constitute clear error. Due weight has been given to the inferences drawn by the trial court and the testifying law enforcement officers. After careful review of the record, there is no indication that the trial court has made a mistake. The trial court has the authority to decide in whose favor the weight of the evidence will lie. Here, the trial court decided in favor of Officer Diels. Such a choice is not clearly erroneous. YellowCab, 338 U.S. at 342.
 {¶ 21} The next question is whether the contact of the police officers with appellant violated the appellant's Fourth Amendment rights. Contact between police officers and the public can be characterized in three different ways. State v. Richardson, 5th Dist. No. 2004CA00205, 2005-Ohio-554 at ¶ 23-27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. United States v. Flowers (6th Cir. 1990),909 F.2d 145, 147. The person approached, however, need not answer any question put to him, and may continue on his way. Florida v.Royer (1983), 460 U.S. 491,497-98 Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id.
 {¶ 22} The second type of contact is generally referred to as "a Terry stop" and is predicated upon reasonable suspicion.Richardson, supra; Flowers, 909 F.2d at 147; See Terry v.Ohio (1968), 392 U.S. 1. This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the Terry
doctrine, "certain seizures are justifiable . . . if there is articulable suspicion that a person has committed or is about to commit a crime" Florida, 460 U.S. at 498.
 {¶ 23} The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." Richardson, supra; Flowers,909 F.2d at 147.
 {¶ 24} In the case at bar, the initial contact with appellant is best placed into the third category. Upon review, under the totality of the circumstances, we conclude the events in the case sub judice constituted an arrest such that the officers were required to have probable cause to believe a crime had been committed and that appellant committed it.
 {¶ 25} In this case at least five police officers descended upon the location to wait for appellant's arrival. (ST., May 5, 2004 at 13-14; 33). The officers "all jumped out of our vehicles and ordered [appellant] to the ground."(Id. at 14). The officers had drawn their weapons. (Id. at 72). Appellant was then handcuffed and searched. (Id. at 14-15; 34-35; 60-61). No weapons or contraband were found on appellant's person during the initial search. (Id.). Appellant was then placed inside a police cruiser while a canine sweep of appellant's car was conducted. (Id. at 15-16; 61; 95-96). Appellant was then taken to a location out of the view of the public where he is removed from the police cruiser and searched a second time. (Id. at 16; 61; 76-77). It is during this search that the drugs were recovered from appellant's person. (Id.).
 {¶ 26} In United States v. Mendenhall (1980), 446 U.S. 544,100 S.Ct. 1870, the United States Supreme Court made the following observation: "[w]e conclude that a person has been `seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. SeeTerry v. Ohio, supra, 392 U.S., at 19, n. 16, 88 S.Ct. at 1879, n. 16; Dunaway v. New York, 442 U.S. 200, 207, and n. 6,99 S.Ct. 2248, 2253, 60 L.Ed.2d 824; 3 W. LaFave, Search and Seizure 53-55 (1978)". Id. at 544, 100 S.Ct. at 1877.
 {¶ 27} On the facts of this case, clearly a "seizure" of the appellant occurred. Consequently, if appellant's arrest was lawful, the cocaine seized from his person was admissible.
 {¶ 28} A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." State v. Heston
(1972), 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376, quoting Beckv. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142.
 {¶ 29} In the case sub judice, appellant argues the information provided by the cooperating defendant did not provide the indicia of reliability necessary to justify an arrest. Specifically, appellant maintains the cooperating defendant's own criminal background and his lack of history in assisting law enforcement renders the information he provided Officer Diels unreliable. Further, appellant maintains that the telephone call from the cooperating defendant to appellant was not recorded; Officer Diehl's was not able to hear the appellant's end of the conversation; and the fact that the officer did not hear any mention of price or amount of drugs to be delivered renders the information he provided insufficient to provide the officers with probable cause to arrest appellant.
 {¶ 30} The courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. Maumee v. Weisner, 87 Ohio St.3d 295,300, 1999-Ohio-68.
 {¶ 31} Appellant does not fit any of the categories of informants. Instead, appellant is a "cooperating defendant" who has not previously assisted law enforcement and therefore, has not provided reliable tips in the past. State v. Allison, 5th Dist. No. 2004CA00279, 2005-Ohio-860 at ¶ 15. Accordingly, as a less reliable informant, in order to provide a sufficient basis for an arrest, the cooperating defendant's information had to be corroborated by independent police investigation. Id.; See also,McCray v. Illinois (1967), 386 U.S. 300, 304-5, 87 S.Ct. 1056,1059. This occurred in the case sub judice.
 {¶ 32} "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." Ornelas v. United States
(1996), 517 U.S. 690, 696, 116 S.Ct. 1657, 16611-162. A police officer may draw inferences based on his own experience in deciding whether probable cause exists. See, e.g., United Statesv. Ortiz (1975), 422 U.S. 891, 897, 95 S.Ct. 2585, 2589.
 {¶ 33} In the case at bar, Officer Diels testified that he had arrested appellant with a large amount of powdered cocaine approximately two weeks prior to the arrest in this case. (ST. May 5, 2004 at 8). At that time appellant was driving a white Cadillac. (Id.). The officer was aware that appellant had made bond prior to the preliminary hearing in the previous case. (Id. at 9). The cooperating defendant told the officer that he could call appellant and arrange a delivery of a large amount of cocaine. (Id.). The cooperating defendant called appellant from his cell phone in the presence of the officer. (Id. at 11). The cooperating defendant informed the officer that appellant would arrive at a specified location driving a white Cadillac and accompanied by a female. (Id. at 12). Appellant arrived at the location, driving a white Cadillac, accompanied by a female companion within ten minutes of the phone call. (Id. at 13).
 {¶ 34} There can be no doubt, upon the basis of the circumstances related by Officer Diels, that there was probable cause to sustain the arrest and incidental search in this case.Draper v. United States (1959), 358 U.S. 307, 79 S.Ct. 329. Officer Diels in this case described with specificity what the informer actually said, and why the officer thought the information was credible. The testimony of the officer informed the court of the underlying circumstances from which the officer concluded that the drugs were to be delivered, and some of the underlying circumstances from which the officer concluded that the cooperating defendant was "credible" or his information "reliable." Upon the basis of those circumstances, along with the officers' personal experiences with the appellant, the court was fully justified in holding that at the time the officers made the arrest `the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. Brinegar v. UnitedStates (1949), 338 U.S. 160, 175, 176, 69 S.Ct. 1302, 1310, 1311;Henry v. United States (1959), 361 U.S. 98, 102, 80 S.Ct. 168,171; Beck v. Ohio (1964) 379 U.S. 89, 91, 85 S.Ct. 223, 225.
 {¶ 35} Even were we to agree with appellant that the cooperating defendant's word and the set-up call were insufficient to establish probable cause, the cooperating defendant's information was surely validated when appellant appeared at the time and place that the cooperating defendant said he would, driving the car he said he would and accompanied by a female companion as he said he would. Consequently, there was probable cause for appellant's arrest and the cocaine seized from his person. State v. Graves, 6th Dist. No. L-02-1053, 2003-Ohio-2359 at ¶ 76.
 {¶ 36} Therefore, we find no error in the denial of the motion to suppress, as the facts and circumstances within the officers knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the appellant had committed or was committing an offense. We find this was not a violation of the Fourth Amendment's prohibition against unlawful search and seizure.
 {¶ 37} Based upon the above, we find the trial court properly overruled the motion to suppress. Appellant's first assignment of error is overruled.
 II. III. {¶ 38} In his Second Assignment of Error appellant maintains that there was insufficient evidence to support his conviction for trafficking in cocaine; in his Third Assignment of Error, appellant maintains that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 39} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492,503.
 {¶ 40} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 41} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins
(1997), 78 Ohio St.3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment."State v. Thompkins, 78 Ohio St.3d 380, 387, 678 N.E.2d 541,1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 42} Appellant challenges his conviction on one count of trafficking in cocaine in violation of R.C. 2925.03(A) (1) (C) (4) (d). To be convicted under this statute the trier of fact would have to find that appellant knowingly sold or offered to sell cocaine in an amount equal to or exceeding ten grams but not exceeding one hundred grams. The parties do not dispute that the amount of cocaine found on appellant's person is within this definition.
 {¶ 43} For purposes of R.C. Chapter 2925, a sale is defined as follows: "`Sale' includes delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee." R.C. 2925.01(A) (incorporating definition found in R.C. 3719.01(AA)). (Emphasis added).
 {¶ 44} In State v. Mitchell, 5th Dist. No. 2001CA00382, 2002-Ohio-6264, this court noted: ". . . the Ohio Supreme Court has held that `R.C. 2925.03 demonstrates a clear legislative intent to define commerce in controlled substances as criminal . . . Consistent with this purpose, the General Assembly defined each of [the] stages of commerce in controlled substances as aggravated trafficking. . . .' State v. Scott (1982),69 Ohio St.2d 439, 440-441, 432 N.E.2d 798. In State v. Scott, the Court held that by marketing a drug, an offender served as a link in the chain of supply. Id. Serving as a link in the chain of supply constituted an offer to sell. Id. From Scott, the Ohio Court of Appeals for the Eighth District noted that all links in the chain of supply are equally culpable. State v. Latina
(1984), 13 Ohio App.3d 182, 187, 468 N.E.2d 1139. Subsequently, the Ohio Court of Appeals for the Fourth District specifically held that a person who acts as a broker in a drug sale, acts as a link in the chain of supply and is guilty of `offering to sell' drugs within the meaning of R.C. 2925 .01. State v. McDaniel
(Nov. 9, 1993), Vinton App. No. CA487 (citing State v. Latina,supra, which relied upon State v. Scott, supra)". Id. at ¶ 12.
 {¶ 45} Here, there was evidence that appellant acted, at the very least, as a link in the chain of supply by offering to deliver a quantity of cocaine to the cooperating defendant. (T., Bench Trial, May 20, 2004 at 29; 31; 33). Immediately upon his seizure by the officers appellant remarked that "the bitch set me up." (Id. at 37; 44-45). Appellant appeared at the time and place that the cooperating defendant said he would, driving the car he said he would and accompanied by a female companion as he said he would.
 {¶ 46} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of trafficking in cocaine.
 {¶ 47} Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259,574 N.E. 2d 492.
 {¶ 48} We hold, therefore, that the state met its burden of production regarding each element of the crime of trafficking in cocaine and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 49} We conclude the trier of fact, here the trial judge, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was, at the very least, serving as a link in the chain of supply, and therefore offering to sell cocaine. Accordingly, appellant's conviction for trafficking in cocaine was not against the manifest weight of the evidence.
 {¶ 50} Appellant's Second and Third Assignments of Error are overruled.
 {¶ 51} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.
By Gwin, J., Boggins, P.J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed. Costs to appellant